STATE OF NEBRASKA, APPELLEE, V.
GRANT EBERLY, APPELLANT.
716 N.W.2d 671

Filed June 30, 2006.    No. S-05-1008.

Mark E. Rappl for appellant.

Jon Bruning, Attorney General, and Michael B. Guinan for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

While the appellant, Grant Eberly, was away from his home, police were dispatched there to investigate a burglary call. Police entered the home and found a marijuana-growing operation. After obtaining a search warrant, they seized the contraband. Eberly moved to suppress the evidence, but the court found the emergency doctrine justified the warrantless entry. Eberly appeals, arguing that the officers' initial entry violated the Fourth Amendment and its Nebraska equivalent; thus, that information was improperly included in the search warrant affidavit and the evidence seized from the home was illegally admitted into evidence. We affirm because the State met its burden of proving that the emergency doctrine applied.

## BACKGROUND

In July 2004, Eberly shared a home with two other male roommates. While the roommates were gone one day, neighbors saw a young man in Eberly's backyard, heard a loud bang, and saw two young men run away from the house carrying a white bag. A neighbor reported the burglary to the police. The police entered the home to ensure that no victims or suspects remained inside. While inside, officers found a marijuana-growing operation. The officers left the house, secured a search warrant, and seized the evidence.

The State charged Eberly with possessing a controlled substance with intent to deliver. He moved to suppress the evidence obtained during the initial entry, arguing that the officers violated his Fourth Amendment rights. The court found the evidence admissible under the emergency doctrine and dismissed the motion to suppress. The court tried Eberly, taking judicial notice of the

suppression hearing testimony, found him guilty, and sentenced him to 2 years of probation.

### INVESTIGATION AT SCENE

On July 27, 2004, Lincoln police officers Carla Cue and Andrew Nichols responded to a call at a Lincoln, Nebraska, address. At 11:26 a.m., the dispatcher informed them that a neighbor reported a burglary at the residence. The neighbor had described the suspects as a white male wearing a white T-shirt and khaki shorts and a black male wearing a "jumpsuit." The dispatcher told Cue and Nichols that the pair carried a white bag and fled, driving a small, two-door white car east on Antelope Creek Road. The dispatcher also provided the name and address of the reporting neighbor.

Before arriving at the house, Cue and Nichols briefly checked the area for anyone fitting the description. Finding no one, they stopped in front of a neighboring house. Cue and Nichols went to the front door first; they noticed nothing unusual, knocked on the door, and received no answer. Officer David Hensel then arrived.

The three officers agreed Hensel would stay at the front door while Cue and Nichols went through the open gate on the side of the house to check the back door. On the way to the back door, a neighbor approached Cue and Nichols. He informed them that earlier, a neighbor had seen a man standing by the back door of the burglarized residence. The man told the neighbor he was waiting for the owner of the house to arrive. Shortly after, the neighbor heard a loud bang, looked through an opening in the fence, and saw two men running from the house. The neighbor also told them that he knew the house's residents, that "three boys" lived there, and that he did not think anyone was home because all of their vehicles were gone.

After speaking with the neighbor, Cue and Nichols went to the back door. They could see the back door had been forced open. Cue noted wood splinters on both the outside and inside of the doorframe and a large piece of doorframe that had completely broken off. Cue and Nichols then loudly announced themselves as police officers several times, received no answer, and entered. With weapons drawn, Cue and Nichols checked both the ground and basement levels of the house.

Cue explained that she did not know whether any suspects or victims remained in the home. They found no suspects or victims, but found a marijuana-growing operation. Cue and Nichols then left the house, called their supervisor, and applied for a search warrant to seize the marijuana. The search warrant incorporated information derived from Cue and Nichols' initial entry. Officers executed the search warrant and seized the evidence. The State then charged Eberly with possessing a controlled substance with intent to deliver. Eberly moved to suppress all evidence ultimately obtained through Cue and Nichols' warrantless entry as violating the Fourth Amendment and its Nebraska counterpart.

### SUPPRESSION HEARING

After a hearing, the district court denied the motion to suppress, finding that the emergency doctrine justified the warrantless entry because the officers "had no way of knowing how many, if any one remained in the house" and "[t]he fact that there were or were not cars parked in the driveway would not be completely dispositive of the matter." It further found that the loud bang described by the neighbor was the sound of the door being breached, but "it could just as well have been a gun shot or evidence of an assault or fight," and that surrounding the house awaiting a warrant would not be a practical solution. The trial court took judicial notice of the evidence presented at the suppression hearing, and Eberly preserved his objection to the evidence. The court then convicted Eberly of possessing a controlled substance with intent to deliver and sentenced him to 2 years of probation.

### ASSIGNMENTS OF ERROR

Eberly argues that the district court erred by overruling his motion to suppress and admitting at trial evidence of the marijuana-growing operation because the officers' initial entry was unsupported by exigent circumstances. He argues that because the initial entry was illegal, the information obtained during that entry—the sight of contraband—could not be used in the search warrant affidavit. Without that information, the search warrant lacked probable cause, and thus the court should not have admitted at trial the evidence seized from Eberly's home.

## STANDARD OF REVIEW

■ An appellate court will uphold the trial court's ruling on a motion to suppress unless the trial court's findings of fact are clearly erroneous. In making this determination, the appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and considers the trial court observed the witnesses testifying in regard to such motions. *State v. Ball, ante* p. 140, 710 N.W.2d 592 (2006).

■ Although we generally uphold suppression motions unless the trial court's findings of fact are clearly erroneous, the Eighth Circuit applies a different standard for exigent circumstances determinations. In *U.S. v. Ball*, 90 F.3d 260, 262 (8th Cir. 1996), the court applied the two-stage standard described in *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), stating:

> The first part of the analysis involves only a determination of the historical facts leading up to the warrantless search. The second part of the analysis requires a decision whether these historical facts, when viewed from the standpoint of an objectively reasonable police officer, support the ultimate conclusion reached by the district court, i.e. that probable cause existed or that exigent circumstances were present. . . . *Ornelas* instructs that the second part of the analysis, the ultimate conclusions reached by the district court, must be reviewed de novo.

(Citations omitted.) We agree with the Eighth Circuit that this is the appropriate standard of review and apply it to this case.

## ANALYSIS

Eberly argues that Cue and Nichols violated his Fourth Amendment rights by entering his home without consent, a warrant, or sufficient exigent circumstances; thus, their observations were illegally obtained and cannot support the search warrant later acquired.

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Nebraska Constitution provides similar protection. See Neb. Const. art. I, § 7.

Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications. *State v. Voichahoske, ante* p. 64, 709 N.W.2d 659 (2006). The warrantless search exceptions recognized by the Nebraska Supreme Court include: (1) searches undertaken with consent or with probable cause, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id.*

But the U.S. Supreme Court has "consistently held that the entry *into a home* to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." (Emphasis supplied.) *Steagald v. United States,* 451 U.S. 204, 211, 101 S. Ct. 1642, 68 L. Ed 2d 38 (1981). " '[I]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.' " 451 U.S. at 512, quoting *Payton v. New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). A police officer who has obtained neither an arrest warrant nor a search warrant cannot make a nonconsensual and warrantless entry into a suspect's home in the absence of exigent circumstances. See, *State v. Plant,* 236 Neb. 317, 461 N.W.2d 253 (1990); *State v. Resler,* 209 Neb. 249, 306 N.W.2d 918 (1981).

Exigency determinations are generally fact intensive. See *U.S. v. Tibolt,* 72 F.3d 965 (1st Cir. 1995). But several commonly recognized categories include:

"(1) 'hot pursuit' of a fleeing felon; (2) threatened destruction of evidence inside a residence before a warrant can be obtained; (3) a risk that the suspect may escape from the residence undetected; or (4) a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to [an occupant]."

*Id.* at 969. See, also, *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990), and *State v. Resler, supra.* This fourth circumstance is also called the "emergency doctrine."

■ The trial court justified Cue and Nichols' entry using the emergency doctrine. This court has previously summarized the elements of the emergency doctrine as follows: (1) The police must have reasonable grounds to believe an emergency exists and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. See *State v. Plant, supra.*

■ Under both exigent circumstances generally and the emergency doctrine specifically, we have stated that two principles must be kept in mind:

> "(1) Since the doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. . . . (2) An objective standard as to the reasonableness of the officer's belief must be applied.
>
> " '. . . [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'. . ."

(Citations omitted.) *State v. Resler*, 209 Neb. at 255, 306 N.W.2d at 922-23.

The State relies on the emergency doctrine to justify the officers' warrantless entry. Eberly disputes only the first two elements of the emergency doctrine. He argues first that the officers could not reasonably believe that additional suspects or occupants remained in the house, needing assistance, and that even if suspects remained in the house, the officers could have prevented

their escape by securing the doors while a warrant was obtained. Second, he argues that even if someone remained in the house, needing emergency assistance, the emergency doctrine does not apply because the officers entered the house to search for evidence of a burglary.

But we need not address his second contention because the U.S. Supreme Court recently clarified in *Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006), that an officer's subjective motivation is irrelevant in determining whether that officer's actions violate the Fourth Amendment. The Court stated that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances viewed, *objectively*, justify [the] action.'" 126 S. Ct. at 1948. Thus, under the emergency doctrine, we no longer consider whether a search is primarily motivated by an intent to arrest and seize evidence.

Under the revised test, we conclude that the State met its burden of proving the emergency doctrine justified the officers' warrantless entry. Cue and Nichols could reasonably believe that additional suspects or occupants remained in the house, needing assistance. Here, the evidence showed that Cue and Nichols knew when they entered the house that (1) a burglary had been reported; (2) a neighbor talked to one of the suspects before the break-in; (3) one of the suspects told the neighbor he was waiting for the owner of the house to arrive; (4) shortly after talking to the suspect, the neighbor heard a loud bang; (5) after the noise, two suspects fled carrying a white bag; (6) the suspects drove east on Antelope Creek Road; (7) officers heard no response and no noises from inside the house despite knocking and announcing their presence several times; (8) the back door was forced open; (9) the neighbor knew the residents of the house and did not believe anyone was home because their cars were all gone; and (10) no cars were parked in the driveway or on the street in front of the house.

Cue described her reasons for entering the house as follows:

> A   We can't assume that there isn't or is someone in the house. Any delay in making that effort to interview witnesses or to interview the callers, if there would have been a victim in that residence and we waited five to ten minutes,

that could be the difference of us being able to come to their aid, or them not surviving, if they were injured.

Q But isn't it true, Officer, that you have to have some reasonable belief to believe that someone is inside the residence to justify that entry?

A The reasonable belief is that you don't. Just because there were no cars, you can't assume that there wasn't anybody in the residence.

Similarly, Nichols testified that he and Cue did not believe that any residents or suspects were in the house when they entered, but they were not sure. Nichols said they entered the house because: "It was an unsecure[d] building at the time; we had no way of knowing for sure what was in the building, if anything, whether it be another suspect, whether it be an injured party. So we went inside to secure the building."

The first requirement of the emergency doctrine is that the police have valid reasons for the belief that an emergency exists—a belief which must be grounded in empirical facts rather than subjective feelings. See *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991). But the emergency doctrine analysis here is similar to probable cause. Compare *State v. Ball, ante* p. 140, 710 N.W.2d 592 (2006), with *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981). Here, we ask, Would the facts available to the officer at the moment of entry " ' " 'warrant a man of reasonable caution in the belief' " ' " that entry was appropriate? See *State v. Resler*, 209 Neb. at 255, 306 N.W.2d at 923.

In *State v. Ball, supra*, we noted that probable cause merely requires that the facts available to the officer would cause a reasonably cautious person to believe that the suspect has committed an offense; *it does not demand any showing that this belief be correct or more likely true than false.* Further, we noted:

"Police officers are not required to be legal scholars. This means, among other things, that the arresting officer's knowledge of facts sufficient to support probable cause is more important to the evaluation of the propriety of an arrest than the officer's understanding of the legal basis for the arrest."

*Id.* at 154, 710 N.W.2d at 605, quoting *Williams v. Jaglowski*, 269 F.3d 778 (7th Cir. 2001). Because the presence of an emergency,

like probable cause, hinges on the reasonable belief of the officers in light of specific facts and the inferences derived therefrom, we must focus on whether Cue and Nichols could have objectively believed an emergency existed, not whether, in hindsight, one actually existed.

We also note that other jurisdictions have found sufficient exigent circumstances or emergency when a police officer reasonably believes that a burglary is in progress or was recently committed. See, e.g., *People v. Berow*, 688 P.2d 1123 (Colo. 1984). See, also, Annot., 64 A.L.R.5th 637 (1998) (collecting cases).

*State v. Bakke*, 44 Wash. App. 830, 723 P.2d 534 (1986), applied such a rule to a case with similar facts. In *Bakke*, the defendant's neighbor reported a burglary in progress to the police at 5:18 p.m. The neighbor saw two male juveniles running from the back door of the defendant's home. When officers arrived, they learned the homeowner's identity from the neighbor and learned that the homeowner could not be contacted because he was at work. The officers observed that the back window of the house was broken, creating an opening large enough for a juvenile to fit through, and saw muddy tracks suggesting someone had recently entered the house. While in the house, the officers found marijuana plants and paraphernalia. They also found other evidence of contraband and secured a search warrant to collect it. On review, the Washington Court of Appeals found the warrantless entry was justified as an emergency because police reasonably believed the home had been burglarized.

The Washington Court of Appeals quoted *Com. v. Fiore*, 9 Mass. App. 618, 403 N.E.2d 953 (1980), as stating the general rule:

> "It seems clear to us that a house break without more— as set out in the affidavit—raises the possibility of danger to an occupant and of the continued presence of an intruder and indicates the need to secure the premises. In such circumstances '[t]he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers.'. . ."

*State v. Bakke*, 44 Wash. App. at 835, 723 P.2d at 537. Accord *United States v. Barone*, 330 F.2d 543 (2d Cir. 1964). Further,

the *Bakke* court reasoned that "[a]mple evidence existed of a recent forcible entry, but the presence or absence of suspects within the premises or the likelihood of damage to the interior could not be ascertained without entering the house." 44 Wash. App. at 838, 723 P.2d at 538. Similarly, the court explained that "[w]hile the police had been told by the neighbors that two male juveniles had been observed running from the back door area of [the defendant's] house, they did not know for certain whether a burglar was still inside the house." *Id.* at 837, 723 P.2d at 538. Thus, the court was reluctant to " 'second-guess' " the officers' decision to enter the defendant's house, finding that the emergency doctrine justified the warrantless entry and limited intrusion. *Id.* at 835-36, 723 P.2d at 537.

The district court here conducted a similar analysis. It concluded:

> The "bang" described by a neighbor was the door being breached. As was pointed out by the State, it could just as well have been a gun shot or evidence of an assault or fight. Surrounding the house and waiting while the warrant was obtained would not have been a practical solution to the problem. Had someone been inside wounded or injured there could be further deterioration while waiting for the warrant to be executed.
>
> "The Court therefore finds that the emergency doctrine which is to allow police officers to enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance", is applicable to this case. *State v. Plant*, 236 Neb. 317 (1990).

We agree. As in *State v. Bakke*, 44 Wash. App. 830, 723 P.2d 534 (1986), we refuse to second-guess the officers' decision to enter the house to determine whether anyone remained inside, needing aid. Although the neighbor informed the police that two suspects had fled and that the residents were not home, the officers could not be sure that no one remained inside. Moreover, as the district court concluded, the loud bang described by the neighbor could easily have been a gunshot or evidence of other violence; thus, the officers justifiably entered the home to address the situation.

We also reject Eberly's argument that securing the house while awaiting a warrant would have been an adequate response. Because the loud bang indicated the possibility of injury, waiting for a warrant to enter would be unreasonable. Cue stated that "if there would have been a victim in that residence and we waited five to ten minutes, that could be the difference of us being able to come to their aid, or them not surviving, if they were injured." The possibility that someone injured remained in the house justified the warrantless entry; that same possibility made securing the house and waiting for a warrant unreasonable under the circumstances.

Because Eberly does not dispute the final remaining element of the emergency doctrine, the scope of the officers' search, we need not address it. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *White v. White, ante* p. 43, 709 N.W.2d 325 (2006). We thus conclude that the emergency doctrine, as revised, justified the officers' warrantless entry.

## CONCLUSION

When applying the two-stage standard described in *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), we conclude that the trial court properly admitted the disputed evidence. Because of the recent burglary and loud bang reported by the neighbor, the officers could reasonably believe there was an emergency at hand, requiring their assistance. Further, Eberly does not contest the scope of the officers' search. Because we conclude that the emergency doctrine justified the warrantless entry and the court properly admitted the evidence obtained from that entry, we affirm the district court's order.

AFFIRMED.