16 Neb. App. 741
STATE OF NEBRASKA, APPELLEE,
v.
ROGER K. SCHMIDT, SR., APPELLANT.
No. A-07-556.
Court of Appeals of Nebraska.
Filed June 3, 2008.
James R. Mowbray and Kelly S. Breen, of Commission on Public Advocacy, for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
MOORE, Judge.

INTRODUCTION
Roger K. Schmidt, Sr., appeals from his convictions following a jury trial in the district court for Jefferson County of one count of first degree sexual assault on a child and four counts of sexual assault of a child. On appeal, Roger raises issues relating to the court's rulings on the State's motion in limine and on the State's objection to certain cross-examination questioning, a particular jury instruction, and the admission of certain statements Schmidt made to a police officer. For the reasons set forth herein, we affirm.

BACKGROUND
On May 16, 2006, Schmidt was charged with two counts of first degree sexual assault on a child in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1995), a Class II felony, and five counts of sexual assault of a child in violation of Neb. Rev. Stat. § 28-320.01 (Cum. Supp. 2004), a Class IIIA felony. The alleged victims were M.C., R.S., and K.S.
On September 7, 2006, Schmidt filed a motion to suppress statements he had made. On October 18, the district court entered an order overruling Schmidt's motion concerning statements stemming from interrogations that occurred on April 27 but sustaining his motion as to an interrogation that occurred on May 1. On March 9, 2007, the district court entered an order ruling on the parties' pretrial motions in limine, in particular sustaining the State's motion in limine. We have set forth additional details of the pretrial proceedings in the analysis section below.
A jury trial was held March 12 through 14, 2007, and on March 14, the jury returned a verdict finding Schmidt guilty of one count of first degree sexual assault on a child and of four counts of sexual assault of a child and not guilty of the remaining two counts. Because of the limited nature of the assignments of error on appeal, we only set forth the portions of the trial testimony as necessary to our resolution of this appeal in the analysis section below.
On May 18, 2007, the district court entered an order sentencing Schmidt to imprisonment for a period of 18 to 25 years on the first degree sexual assault on a child conviction and a period of not less than 5 years nor more than 5 years on each conviction for sexual assault of a child. The court ordered Schmidt's sentences to run consecutively. Schmidt subsequently perfected his appeal to this court.

ASSIGNMENTS OF ERROR
Schmidt asserts that the district court erred in (1) sustaining the State's motion in limine, (2) sustaining the State's objection to certain cross-examination questioning of a witness regarding an unfounded allegation, (3) submitting jury instruction No. 14, and (4) admitting Schmidt's statements to a police officer.

STANDARD OF REVIEW
[1-3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. State v. Kuehn, 273 Neb. 219, 728 N.W.2d 589 (2007). The exercise of judicial discretion is implicit in determinations of relevancy under Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), and prejudice under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), and a trial court's decision regarding them will not be reversed absent an abuse of discretion. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007), cert. denied sub nom. Sommer v. Nebraska, ___ U.S. ___, 128 S. Ct. 186, 169 L. Ed. 2d 126. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007).
[4] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause and reviews the underlying factual determinations for clear error. State v. Jacobson, 273 Neb. 289, 728 N.W.2d 613 (2007).
[5] Whether jury instructions given by a trial court are correct is a question of law. State v. Fischer, 272 Neb. 963, 726 N.W.2d 176 (2007). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. Id.
[6-9] Whether a defendant's statements resulted from an officer's promise is a question of fact. State v. Ray, 241 Neb. 551, 489 N.W.2d 558 (1992). An appellate court will uphold the trial court's ruling on a motion to suppress unless the trial court's findings of fact are clearly erroneous. State v. Eberly, 271 Neb. 893, 716 N.W.2d 671 (2006). In making this determination, the appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and considers the trial court observed the witnesses testifying in regard to such motions. Id. A district court's finding and determination that a defendant's statement was voluntarily made will not be set aside on appeal unless this determination is clearly erroneous. State v. Walker, 272 Neb. 725, 724 N.W.2d 552 (2006).

ANALYSIS

Motion in Limine.
Schmidt asserts that the district court erred in sustaining the State's motion in limine, arguing the court's ruling prevented him from presenting relevant evidence that M.C. and K.S. both had previously reported allegations of sexual abuse by other perpetrators and that by experience, both were aware of the propriety of reporting "'bad touches" and the protections afforded by their parents, police, and counselors. Brief for appellant at 12. Schmidt argues that he was denied his constitutional rights to confrontation and compulsory process to answer and rebut evidence presented by the State to explain why M.C. and K.S. did not promptly report Schmidt's alleged abuse and why K.S. repeatedly denied her father's allegations against Schmidt.
[10,11] A motion in limine is but a procedural step to prevent prejudicial evidence from reaching the jury. State v. Timmens, 263 Neb. 622, 641 N.W.2d 383 (2002). It is not the office of such a motion to obtain a final ruling upon the ultimate admissibility of the evidence. Id. Rather, its office is to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to the jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself. Id. In order to preserve any error before an appellate court, the party opposing a motion in limine which was granted must make an offer of proof outside the presence of the jury unless the evidence is apparent from the context within which questions were asked. State v. Bruna, 12 Neb. App. 798, 686 N.W.2d 590 (2004).
The State's motion in limine is not included in our record, but the record does include the bill of exceptions from the pretrial hearing on the State's motion and certain motions in limine by Schmidt and the district court's rulings on those motions. At the hearing on the motions in limine, Schmidt made an offer of proof consisting of the pretrial depositions of M.C., M.C.'s mother, K.S., and K.S.' parents. The depositions show that M.C. and K.S. were interviewed regarding prior possible allegations of sexual assault by individuals other than Schmidt. Specifically, K.S. was interviewed when she was 4 years old in connection with a suspicion by her parents of a sexual assault by a cousin. M.C. was interviewed when she was approximately 51/2 years old, but she made no allegations of sexual assault. Schmidt's counsel argued to the court that he wished to cross-examine K.S. and M.C. regarding these prior matters and to call their parents as witnesses to inquire about the prior matters. Schmidt's counsel argued further that Schmidt's right of confrontation included the right to inquire regarding the prior matters because they provided a basis for a child witness' becoming educated in the process of making reports of sexual abuse. The court inquired as follows:
THE COURT: So in other words, if a child knew goodtouch bad-touch, had actually reported something like that before, you want to bring that out in cross-examination and/or examination of the parents and then be able to ask why did you wait  why did you wait whatever amount of time you waited before you reported it in this case; is that the gist of it?
[Schmidt's counsel]: That's the gist of it.
On March 9, 2007, the district court entered an order ruling on the motions in limine. The court did not find that the previous matters constituted past sexual behavior within the scope of Neb. Rev. Stat. § 28-321 (Reissue 1995) or that the evidence should be barred under the provisions of Neb. Rev. Stat. § 27-404 (Reissue 1995). The court did find, however, that the evidence should be excluded under the provisions of § 27-403 because any probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Accordingly, the court granted the State's motion in limine.
At trial, Schmidt's counsel cross-examined witnesses, including K.S.' father, who testified on cross-examination that he suspected during the previous 4 years that Schmidt was touching K.S. inappropriately; that he had questioned K.S. repeatedly about this, including questioning in the presence of K.S.' mother; and that K.S. had repeatedly responded, "'No. Roger is my friend." On cross-examination of K.S., Schmidt's counsel elicited testimony that K.S. had received bad touches from her cousin, that K.S. had told M.C. about the cousin's bad touches, and that K.S. had responded negatively to certain questioning by her father about being touched by Schmidt. K.S. was asked about inconsistent statements, including her deposition testimony. From M.C., Schmidt elicited testimony that she had known the difference between good and bad touches prior to a school presentation on the topic in April 2006 and had known the difference for quite some time prior to the presentation. M.C. testified she did not tell her parents or teacher about what Schmidt was doing prior to April 2006 and continued to go over to Schmidt's house and ask Schmidt to take her fishing despite knowing that her parents and teacher would protect her from Schmidt. M.C. was also questioned about prior inconsistent statements and details of her allegations.
We also note that Schmidt's counsel conducted a thorough cross-examination of Katy Hilgenkamp, a licensed mental health practitioner, who testified on direct examination about the difficulties young children who have been sexually abused have in disclosing that abuse. Schmidt's counsel questioned Hilgenkamp about whether children who had been supported by adults when reporting prior sexual abuse would be more likely to report subsequent instances of sexual abuse, and Hilgenkamp testified, "If they have talked about it before and been supported and believed and not punished, I would think that would make it easier for them to report again."
At trial, prior to the presentation of evidence by the defense, Schmidt made a motion asking the court to reconsider its ruling on the State's motion in limine and made an offer of proof limited to the proposed testimony of K.S.' parents and M.C.'s mother. In response to Schmidt's motion, the court stated:
All right. There is certainly a legitimate argument to be made, as [Schmidt's counsel] has ably been making. That there's relevancy to the matters that were the subject of the State's motion in limine. However, the Court continues to find that any relevancy is outweighed by the lack of probative value, and the other matters in Rule 403. So the Court overrules the motion to reconsider its ruling on the State's motion in limine in light of .. . Hilgenkamp's testimony.
Schmidt's counsel then proceeded to make his offer of proof and represented that K.S.' parents would testify that 3 weeks before Thanksgiving 2001, K.S. stated her cousin had touched her inappropriately, and that Schmidt had not touched her as of that time. Schmidt's counsel further represented that K.S.' parents would testify that the case involving the cousin had been prosecuted, that K.S. had been interviewed at a child advocacy center with respect to the cousin, that K.S. had been informed about inappropriate touching, and that K.S. knew the difference between a good touch and a bad touch. Schmidt's counsel represented that M.C.'s mother would testify that in January 2002, there had been an investigation into whether the mother's former boyfriend had inappropriately touched M.C., and that the mother had talked with M.C. about appropriate and inappropriate touching. Following Schmidt's offer of proof, the district court renewed its ruling on the State's motion in limine and excluded the evidence.
[12-16] Schmidt argues that his right of confrontation was denied by the district court's ruling. The right of a person accused of a crime to confront the witnesses against him or her is a fundamental right guaranteed by the 6th amendment to the U.S. Constitution, as incorporated in the 14th amendment, as well as by article I, § 11, of the Nebraska Constitution. State v. Stark, 272 Neb. 89, 718 N.W.2d 509 (2006). The functional purpose of the Confrontation Clause is to ensure the integrity of the factfinding process through the provision of an opportunity for effective cross-examination. Id. An accused's constitutional right of confrontation is violated when either (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, or (2) a reasonable jury would have received a significantly different impression of the witness' credibility had counsel been permitted to pursue his or her proposed line of cross-examination. Id. The right of cross-examination is not unlimited. Id. The scope of crossexamination of a witness rests largely in the discretion of the trial court, and its ruling will be upheld on appeal unless there is an abuse of discretion. Id.
A review of the trial testimony of K.S. and her parents and M.C. and her mother clearly shows that Schmidt was not absolutely prohibited from engaging in otherwise appropriate cross-examination of the witnesses in question, and there is nothing to suggest that a reasonable jury would have received a significantly different impression of the witnesses' credibility had Schmidt's counsel been permitted to further pursue his proposed line of cross-examination. Accordingly, Schmidt's right of confrontation was not violated. Nor do we find an abuse of discretion in the district court's exclusion of the evidence on the basis of its lack of probative value and the danger of confusion of the issues. Schmidt's assignment of error concerning the court's ruling on the State's motion in limine is without merit.

Cross-Examination.
Schmidt asserts that the district court erred in sustaining the State's objection to certain cross-examination questioning of a witness regarding an unfounded allegation. Schmidt does not direct us to the point in the record where the court made the ruling of which he complains, but a perusal of Schmidt's crossexamination of M.C. reveals the following exchange concerning another child, "T.B.":
[Schmidt's counsel:] Did you tell [an interviewer] at the Child Advocacy Center . . . that you would play cards with [Schmidt] and [T.B.] and observe [Schmidt] touch [T.B.'s] vagina?
[Prosecutor]: I'm going to object, Your Honor, on relevancy and hearsay.
THE COURT: Sustained.
[Schmidt's counsel]: Judge, I'm not trying to prove [the truth of] the matter in statements that she made in an interview with anyone. Statements, I think, are fair game to talk with her about as to whether she made those statements.
THE COURT: All right. I will ask counsel to approach. (Discussion had off the record.)
THE COURT: All right. And the objection is sustained.
[17] Schmidt argues that his cross-examination of M.C. was thwarted when the court sustained the State's objection; Schmidt contends, "Her allegation that she witnessed [Schmidt] assault another child was unfounded. She may have well admitted this at trial, but this question is unanswered." Brief for appellant at 16. Schmidt further argues that the question was proper as it was relevant to bias, prejudice, and credibility. The State argues that Schmidt has waived this assignment of error because he did not make an offer of proof to establish what M.C.'s testimony would have been had she been allowed to answer the question. Error may not be predicated upon a ruling of a trial court excluding testimony of a witness unless the substance of the evidence to be offered by the testimony was made known to the trial judge by offer or was apparent from the context within which the questions were asked. State v. Williams, 269 Neb. 917, 697 N.W.2d 273 (2005).
Although Schmidt did not make an offer of proof during the course of M.C.'s testimony, he did make an offer of proof at a later point in the trial. Following R.S.' testimony, a break was taken and the jury was escorted out. At that time, the court referred to the sidebar exchange that occurred during M.C.'s testimony, stating that it had been agreed that Schmidt's counsel would be allowed to make a further offer of proof with respect to M.C.'s testimony. At that time, Schmidt's counsel represented to the court that if M.C. were allowed to testify about statements she made at the child advocacy center, she would testify that she identified an occasion in which Schmidt, T.B., and she were playing cards; that she told investigators that Schmidt touched T.B. on her vagina; and that she saw this while she was picking up a card she had dropped off the table. The court noted the offer of proof and again sustained the State's previous hearsay and relevancy objections to the testimony.
[18,19] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. State v. Robinson, 271 Neb. 698, 715 N.W.2d 531 (2006), cert. denied ___ U.S. ___, 127 S. Ct. 1815, 167 L. Ed. 2d 326 (2007). Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006), cert. denied ___ U.S. ___, 127 S. Ct. 1129, 166 L. Ed. 2d 893 (2007). The difficulty with Schmidt's offer of proof in this instance is that it does nothing to establish whether the allegations regarding Schmidt's actions toward T.B. were unfounded. Despite his counsel's assertion at trial that he did not want to prove the truth of whether Schmidt actually assaulted T.B., when reviewing Schmidt's arguments on appeal, it is clear that Schmidt wanted to prove that the allegations about assault of T.B. were false and to accordingly attack the credibility of M.C.'s allegations about her own alleged assault. We note that Schmidt was not charged in this case with assaulting T.B. Clearly, the question of whether Schmidt assaulted another girl on a particular occasion does little to make it more or less probable that Schmidt assaulted M.C. on any number of other given occasions. The district court properly excluded the evidence as hearsay, and we find no abuse of discretion in the exclusion of the evidence on the ground of relevancy. Nor do we find a violation of Schmidt's right of confrontation in this instance. Schmidt's second assignment of error is without merit.

Jury Instruction No. 14.
[20-22] Schmidt asserts that the district court erred in submitting jury instruction No. 14. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. State v. Fischer, 272 Neb. 963, 726 N.W.2d 176 (2007). Before an error in the giving of instructions can be considered as a ground for reversal of a conviction, it must be considered prejudicial to the rights of the defendant. Id. Jury instructions must be read as a whole, and if they fairly present the law so that the jury could not be misled, there is no prejudicial error. Id.
Jury instruction No. 14 was given over Schmidt's objection and provided, "The testimony of a person who is the victim of a sexual assault, as charged in this case, does not require corroboration. It is for you to decide what weight to give the testimony of [M.C., R.S., and K.S.]" Schmidt argues that this instruction is confusing and misleading when read in conjunction with jury instructions Nos. 2(D) and 3(D)(6). Instruction No. 2(D) provided, "In criminal prosecutions, the burden of proof never shifts from the State to the defendant; hence a conviction can be had only when the jury is satisfied from all the evidence of the defendant's guilt beyond a reasonable doubt." Instruction No. 3(D) provided:
You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In determining this, you may consider . . . .
. . . .
(6) [t]he extent to which the witness is corroborated, if at all, by circumstances or by the testimony of other witnesses you regard as credible.
Jury instruction No. 14 is a correct statement of Nebraska law. Neb. Rev. Stat. § 29-2028 (Reissue 1995) provides, "The testimony of a person who is a victim of a sexual assault as defined in sections 28-319 to 28-320.01 shall not require corroboration." Schmidt agrees, but he urges that the instruction should not have been given because it was confusing and misleading when read in conjunction with the other instructions. Schmidt argues that the instruction suggested that the jury should weigh the girls' testimonial credibility without any consideration of corroboration and that it further suggested that the girls were victims of sexual assault. We disagree. When read as a whole, the instructions fairly present the law and are not misleading. The instructions, when taken together, advise the jury that while corroboration of the victim's testimony is not required, corroboration, or the lack thereof, may be considered by the jury in determining the weight to be given to the testimony. The jury clearly did not take the instructions as direction that the girls were victims of the charged sexual assaults, because it found Schmidt not guilty on two of the seven counts. We find no prejudicial error in the giving of jury instruction No. 14.

Statements to Law Enforcement.
Schmidt asserts that the district court erred in admitting Schmidt's statements to a police officer, and he argues that his statements were rendered involuntary by the officer's assurances that Schmidt was not a child molester and that the investigation did not need to be in the newspaper.
At the hearing on Schmidt's pretrial motion to suppress, the court heard testimony from Sgt. Douglas Klaumann of the Fairbury Police Department. Klaumann testified that on April 27, 2006, he was investigating an allegation of a sexual assault of a minor. At approximately 5 p.m., Klaumann telephoned Schmidt at his residence and asked Schmidt to come to the police department to discuss some allegations involving Schmidt. Schmidt agreed to do so immediately and drove his own vehicle to the station. Upon Schmidt's arrival, he was met by Klaumann and escorted to a room where Klaumann began to interview Schmidt. Klaumann testified that at that time, Schmidt was free to leave. Initially, Klaumann engaged Schmidt in "small talk" before advising Schmidt that he needed to speak with him about some allegations and reading Schmidt his Miranda rights. Schmidt stated that he understood his rights, and Klaumann began to question him about certain allegations made by M.C. when she was interviewed at the child advocacy center.
After about 30 minutes of denying any inappropriate touching, Schmidt admitted to inappropriately touching M.C. on two different occasions in the area of her vagina on the exterior of her clothing. At some point, Klaumann indicated to Schmidt that he felt Schmidt was not being truthful. Schmidt responded by blaming M.C. for the inappropriate touching and commented, "'If I touched [M.C., R.S., or K.S.], I didn't mean it." Schmidt expressed some concern to Klaumann about the investigation's becoming public knowledge. Specifically, Schmidt expressed concern that the investigation was going to be made public in the news media, and in response, Klaumann advised Schmidt, "I don't do that. I don't call the newspaper and give them [sic] this type of information." Schmidt indicated that he felt that Klaumann was labeling him as a child molester, and Klaumann advised Schmidt that he was not doing so. Eventually, Schmidt began to admit touching M.C. a number of times, and Klaumann made the decision to place Schmidt under arrest. Shortly after concluding the first interrogation, Klaumann interrogated Schmidt again. Klaumann reminded Schmidt of his Miranda rights and prior waiver of them but did not fully recite the rights advisory again. In the second interview, Schmidt simply confirmed the statements he made previously in the first interview. Schmidt was then arrested. A recording of Schmidt's statements was received into evidence at the suppression hearing.
Before the district court and on appeal, Schmidt relied on State v. Erks, 214 Neb. 302, 333 N.W.2d 776 (1983), a case in which the Nebraska Supreme Court found no clear error in the trial court's suppression of admissions made after a police officer promised the defendant to stifle publicity about his case. The officer had also told the defendant that the police would protect him and his family from embarrassment if possible.
In its October 18, 2006, order ruling on Schmidt's motion to suppress, the district court indicated that it had listened to the recording of the interrogations in this case. The court noted that although Schmidt was concerned about publicity, Klaumann never promised that there would be no publicity. Klaumann simply told Schmidt that Klaumann did not "put things in the paper" and that as far as Klaumann was concerned, the matter "did not need to be in the paper." The court determined that Schmidt's statements in the first and second interviews by Klaumann on April 27 were not involuntary. The court observed that Klaumann was careful not to make any promises regarding publicity and found the case clearly distinguishable from State v. Erks. The court found that the second interrogation carried no taint from the first interrogation and was merely a recapitulation of the previous voluntary statements. The court overruled Schmidt's motion as to the statements stemming from the two interrogations on April 27.
[23-26] In making the determination of whether a statement is voluntary, a totality of the circumstances test is applied, and the determination reached by the trial court will not be disturbed on appeal unless clearly wrong. State v. McPherson, 266 Neb. 734, 668 N.W.2d 504 (2003). Generally, a defendant's statement is inadmissible only if the totality of the circumstances shows that the police offered the defendant a benefit in exchange for the statement. State v. Ray, 241 Neb. 551, 489 N.W.2d 558 (1992). If a benefit is offered in exchange for testimony, and the offer is definite, then a confession is involuntary and must be suppressed. Id. Mere deception will not render a statement involuntary or unreliable; the test for determining the admissibility of a statement obtained by police deception is whether that deception produced a false or untrustworthy confession or statement. State v. Nissen, 252 Neb. 51, 560 N.W.2d 157 (1997). We find nothing in the record to suggest that Klaumann offered Schmidt a definite benefit in exchange for his statements or any indication that any deception on the part of Klaumann produced false or untrustworthy statements from Schmidt. The district court's ruling on Schmidt's motion to suppress is not clearly erroneous.

CONCLUSION
The district court did not abuse its discretion in excluding the evidence referenced in the State's motion in limine, and the ruling did not violate Schmidt's right of confrontation. The court properly sustained the State's objection to certain cross-examination of M.C. The court did not err in giving jury instruction No. 14. The court's ruling on Schmidt's motion to suppress was not clearly erroneous.
AFFIRMED.
CASSEL, Judge, concurring.
I write separately only to emphasize that, in my opinion, a jury instruction such as instruction No. 14 should not be routinely given. Counsel for the State forthrightly conceded at oral argument that it would not have been error for the trial judge to refuse the instruction. An examination of legal standards for giving or refusing instructions, in light of the history of Neb. Rev. Stat. § 29-2028 (Reissue 1995), reveals why, absent unusual circumstances, a judge should not accede to a request for such instruction.
At common law, the testimony of the prosecutrix in the trial of all offenses against the chastity of women was alone sufficient to support a conviction and no corroborating evidence or circumstances were necessary. State v. Fisher, 190 Neb. 742, 212 N.W.2d 568 (1973). See, also, 75 C.J.S. Rape § 94 (2002). Nebraska initially followed the common-law rule. In Garrison v. The People, 6 Neb. 274 (1877), the Nebraska Supreme Court stated that the injured party in such case was a competent witness, but that her credibility must be left to the jury.
In Mathews v. State, 19 Neb. 330, 27 N.W. 234 (1886), the Nebraska Supreme Court created a rule requiring corroboration, thereby rejecting a verdict sustained solely by the testimony of the prosecuting witness. The court quoted Sir Matthew Hale's statement that rape "'is an accusation easily to be made and hard to be proved, and harder to be defended [against] by the party accused, though never so innocent." Id. at 335, 27 N.W. at 236. The court also recognized:
At common law the accused was not permitted to testify in his own behalf. However false or malicious the charge might be his lips were sealed, and if the prosecutrix testified positively to the facts constituting the offense, and there was no evidence to the contrary, the courts held the evidence sufficient.
Id. at 337, 27 N.W. at 237. Thus, the rule of corroboration was judicially established.
Such rules of corroboration increasingly generated criticism. E.g., Note, The Rape Corroboration Requirement: Repeal Not Reform, 81 Yale L.J. 1365 (1972). In 1973, the Nebraska Supreme Court recognized that Nebraska was "in a small minority of states which have adopted an unqualified corroboration rule by judicial decision." State v. Fisher, 190 Neb. at 746, 212 N.W.2d at 571. Nonetheless, even after the adoption of a new criminal code in 1977, Nebraska adhered to the rule. Finally, in 1986, while a majority of the Nebraska Supreme Court continued to recognize the rule, three justices opined that the "outdated and discriminatory rule of required corroboration of a victim's testimony regarding a sexual assault should be eliminated from the Nebraska criminal justice system." State v. Daniels, 222 Neb. 850, 861-62, 388 N.W.2d 446, 454 (1986) (Shanahan, J., concurring; Krivosha, C.J., and White, J., join). The Legislature responded.
In 1989, the Legislature adopted the statute now codified at § 29-2028. See 1989 Neb. Laws, L.B. 443. As the court's opinion in the instant case recognizes, this statute declares that "[t]he testimony of a person who is a victim of a sexual assault.. . shall not require corroboration." § 29-2028. The senator who introduced the bill explained to the Judiciary Committee:
LB 443 changes the corroboration rule. Corroboration is a judicially created evidentiary rule that establishes special requirements for sexual assault prosecutions. Specifically, corroboration is additional testimony of [sic] evidence beyond the testimony of a victim. Without corroboration, a conviction for a sexual assault cannot be upheld in Nebraska. . . . Nebraska is the only state that has retained the corroboration rule for all cases of sexual assault. .. . Corroboration is not required for any other criminal testimony in Nebraska. . . . The continued existence of the corroboration rule, therefore, does little to protect an innocent defendant, while perpetuating an insulting stereotype of women victims of sexual assault. . . . The Pages have passed out a copy of [Justice] Shanahan's concurring opinion in the Daniels case . . . . In this opinion, [Justice] Shanahan argues for the repeal of the corroboration rule.
Judiciary Committee Hearing, 91st Leg., 1st Sess. 33-34 (Feb. 1, 1989). In State v. Williamson, 235 Neb. 960, 458 N.W.2d 236 (1990), the Nebraska Supreme Court acknowledged the legislative demise of the judicially created rule.
Two important and related lessons derive from this history. First, because the corroboration rule had been judicially adopted, there was no prior statute for the Legislature to simply amend or repeal. Thus, elimination of the rule required affirmative legislation. Second, by enacting the statute, the Legislature placed sexual assault prosecutions on equal footing with those of virtually every other criminal offenseno corroboration is required. In other words, in all cases, the jury evaluates the testimony of a victim just as it does the testimony of any other witness.
The legal standards applicable to giving or refusing instructions confirm that the instruction is superfluous. This court has recognized that a slightly different question is presented when the claim is that an instruction should have been given than when the claim is that an instruction should not have been given. Suiter v. Epperson, 6 Neb. App. 83, 571 N.W.2d 92 (1997). Despite such difference, I find significance in the State's concession at oral argument.
In reviewing a court's decision to give an instruction, as this court correctly recognizes, all the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. See State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007), cert. denied sub nom. Sommer v. Nebraska, ___ U. S. ___, 128 S. Ct. 186, 169 L. Ed. 2d 126. On the other hand, to establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. State v. Hessler, 274 Neb. 478, 741 N.W.2d 406 (2007). In both instances, the instruction must correctly state the law and must be warranted by the evidence. The difference is that as to an instruction given, the question is whether the instructions as a whole thereby became misleading, while as to an instruction refused, we examine whether the appellant was prejudiced by the failure to give the instruction. This inquiry frequently focuses upon whether the substance of the requested instruction was covered in the instructions given. See State v. Gales, 269 Neb. 443, 694 N.W.2d 124 (2005).
This court properly rejects Schmidt's argument that the instruction was misleading. Particularly because of the second sentence of instruction No. 14 ("hilt is for you to decide what weight to give the testimony . . ."), when that instruction is read together with the other instructions, it becomes apparent that the jury is to evaluate a victim's testimony in the same manner as it does the testimony of other witnesses. Such testimony may or may not have corroboration, and the jury may consider the presence or absence of such corroboration in determining the weight to be given to the testimony.
The State's concession at oral argument confirms that it would not have been prejudiced had the court refused the instruction. Because the current law treats the testimony of a victim the same as that of any other witness, the general instruction on credibility of witnesses adequately covers the topic. In instruction No. 14, when one substitutes for the word "victim" the word "witness," "bystander," or "investigator," the redundancy of the instruction becomes manifest.
Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case. State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006). The general instruction regarding witness credibility was adequate to cover the situation in the case before us. Giving the redundant instruction introduced an unnecessary risk of undue emphasis of a part of the evidence. See State v. Nesbitt, 264 Neb. 612, 650 N.W.2d 766 (2002). There was no reason to give the instruction, and unless special circumstances in a particular case require such instruction, I respectfully suggest that a trial judge should not do so.