276 Neb. 723
STATE OF NEBRASKA, APPELLEE,
v.
ROGER K. SCHMIDT, SR., APPELLANT.
No. S-07-556.
Supreme Court of Nebraska.
Filed November 7, 2008.
James R. Mowbray and Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Following a jury trial in the district court for Jefferson County, Roger K. Schmidt, Sr., was convicted of one count of first degree sexual assault on a child and four counts of sexual assault of a child. The Nebraska Court of Appeals affirmed his conviction,[1] and we granted his petition for further review. We now affirm the judgment of the Court of Appeals affirming Schmidt's convictions and sentences.

I. BACKGROUND

1. DISTRICT COURT PROCEEDINGS
Two of the three alleged female victims in this case were M.C., who was 10 years old at the time of trial, and K.S., who was 9. Schmidt's son lives with M.C.'s mother, and M.C. generally considered Schmidt to be her grandfather. K.S. lived across the street from Schmidt, considered him a friend, and frequently visited his home. Schmidt was charged with multiple acts of sexual assault against M.C. and K.S. during a period from January 1, 2001, to March 31, 2006. M.C. first reported the assaults to a school counselor on April 25, 2006, after a school program entitled "Good Touch Bad-Touch." M.C. subsequently reported that K.S. told her she had also been touched inappropriately by Schmidt.
Prior to trial, the State filed a motion in limine requesting that defense counsel be prohibited from commenting upon or cross-examining M.C. and K.S. regarding prior allegations of sexual assault directed at persons other than Schmidt. The State's position was that such evidence was irrelevant. Schmidt's counsel argued that the evidence was relevant to show that M.C. and K.S. were aware of the significance of "bad touch" prior to the alleged incidents involving Schmidt, but nevertheless did not immediately report them. He made an offer of proof, consisting of the depositions of M.C., her mother, and the parents of K.S., which established that both minors had been interviewed regarding prior allegations or suspicion of sexual abuse by persons other than Schmidt. Schmidt's counsel argued that he should be permitted to cross-examine M.C. and K.S. regarding these matters. The district court summarized Schmidt's argument as follows:
So in other words, if a child knew good-touch bad-touch, had actually reported something like that before, you want to bring that out in cross-examination and/or examination of the parents and then be able to ask why did you wait . . . whatever amount of time you waited before you reported it in this case; is that the gist of it?
Schmidt's counsel responded affirmatively.
On direct examination at trial, M.C. testified that for a period of 3 to 4 years before she reported him, Schmidt had repeatedly subjected her to sexual touching, including digital penetration. On cross-examination, Schmidt's counsel elicited testimony that M.C. knew the difference between "good touch" and "bad touch" for some time prior to reporting Schmidt. M.C. also testified that she did not tell anyone of Schmidt's conduct before April 2006, despite knowing that her parents and her teacher could protect her.
Also on cross-examination, Schmidt's counsel asked M.C. if she told a counselor that she had observed Schmidt sexually touching another minor, T.B. The State objected on grounds of relevancy and hearsay, and the district court sustained the objection. Later, out of the presence of the jury, Schmidt's counsel made an offer of proof that if allowed to answer his question, M.C. would have admitted that she had made the allegation regarding Schmidt and T.B.
K.S. testified that Schmidt had been touching her since she was 4 years old and that he had touched or rubbed between her legs on numerous occasions. K.S. first told M.C. about the touching when K.S. was 8, but told no one else at that time because she was afraid. K.S. testified on cross-examination that she had previously been touched inappropriately by a cousin and that she told M.C. about this. She also testified that when her parents inquired, she initially denied being touched by Schmidt.
Douglas Klaumann, a police sergeant who investigated M.C.'s complaint, testified for the State. On cross-examination, Schmidt's counsel began to ask Klaumann, "Did [M.C.] report any other child that she witnessed . . . ." The State objected on grounds of relevance and hearsay, and the objection was sustained. Out of the presence of the jury, Schmidt's counsel made an offer of proof that if allowed to testify, Klaumann would state that M.C. reported that on an occasion when she and T.B. were playing cards with Schmidt at his home, "she thought she observed . . . Schmidt touching [T.B.] on the area of her vagina on the outside of her clothes." The court sustained the State's relevancy and hearsay objections to the offer of proof. Schmidt's counsel then made a second offer of proof that if permitted to testify, Klaumann would testify that he interviewed T.B. and her sister and that both denied being touched in a sexual manner by Schmidt. The court again sustained the State's relevancy and hearsay objection.
After the State had rested and the court had overruled Schmidt's motion for a directed verdict, Schmidt's counsel requested that the court reconsider its ruling on the State's motion in limine prohibiting defense counsel from commenting upon or cross-examining M.C. and K.S. regarding prior allegations of sexual abuse by persons other than Schmidt. The court overruled this request for the reasons stated in its ruling on the motion in limine. Schmidt's counsel then made several offers of proof similar to those made at the time of the original hearing on the State's motion in limine. He stated that if permitted to testify, the parents of K.S. would testify that she had reported to them approximately 4 years earlier that she had been inappropriately touched by a cousin, who was subsequently prosecuted, and that at the time of this incident, K.S. understood the difference between appropriate and inappropriate touching.
Schmidt's counsel made a further offer of proof that if permitted to testify, M.C.'s mother would state that in 2002, there had been an investigation into whether her former boyfriend had abused M.C. and that the mother had talked to M.C. at that time about appropriate and inappropriate touching. At that time, M.C. was 5½ years old, and she had not actually reported any abuse prior to the investigation. M.C. was interviewed, but no charges were brought. The court reaffirmed its ruling on the motion in limine excluding the matters stated in both offers of proof.
At an instruction conference, Schmidt's counsel objected to proposed jury instruction No. 14, which stated: "The testimony of a person who is the victim of a sexual assault, as charged in this case, does not require corroboration. It is for you to decide what weight to give the testimony of [M.C. and K.S.]." Schmidt's counsel acknowledged that the instruction was a correct statement of the law, but argued that it was confusing and misleading when considered together with the general witness credibility instruction which was also proposed. The objection was overruled, and instruction No. 14 was given, as was the general witness credibility instruction.
The jury returned guilty verdicts on five of the seven counts charged. Three of these counts involved M.C., one involved K.S., and the fifth involved a third victim. The jury returned not guilty verdicts on two counts, both of which involved K.S. The district court entered judgment on the verdicts and sentenced Schmidt to five consecutive terms of imprisonment. Schmidt appealed.

2. COURT OF APPEALS
In his appeal, Schmidt assigned that the district court erred in (1) sustaining the State's motion in limine, (2) sustaining the State's objection to cross-examination of M.C. regarding her reported observation of Schmidt's touching T.B., (3) submitting jury instruction No. 14, and (4) admitting statements made by Schmidt to a police officer. The Court of Appeals found no merit in any of these assignments.
The court held that Schmidt's right of confrontation was not violated by either the ruling on the motion in limine and resulting exclusion of evidence or the restriction on cross-examination of M.C. with respect to her report that Schmidt improperly touched T.B. With respect to the alleged incident involving T.B., the Court of Appeals noted that Schmidt's offer of proof did not "establish whether the allegations regarding Schmidt's actions toward T.B. were unfounded.[2] The court found no error in the admission of certain incriminating statements which Schmidt gave to police and no error in the giving of jury instruction No. 14. In a concurring opinion, one member of the court expressed his opinion that while jury instruction No. 14 was a correct statement of the law and was not misleading, it need not have been given, because the general instruction regarding witness credibility was adequate.[3] The concurring judge concluded that in the absence of special circumstances, trial judges should not specifically instruct the jury that the testimony of an alleged sexual assault victim does not require corroboration.

II. ASSIGNMENTS OF ERROR
In his petition for further review, Schmidt assigns, restated, that the Court of Appeals erred in affirming his convictions because (1) jury instruction No. 14 was confusing, misleading, and prejudicial to his defense; (2) the trial court denied his right to confront and cross-examine victim M.C. to demonstrate bias, prejudice, and lack of credibility; and (3) the trial court denied his right to compulsory process and impaired his right to effective cross-examination of victims M.C. and K.S. by granting the State's motion in limine.

III. ANALYSIS

1. JURY INSTRUCTION No. 14

(a) Standard of Review
[1,2] Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court.[4] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[5]

(b) Disposition
It is undisputed that the challenged jury instruction is a correct statement of the law as set forth in Neb. Rev. Stat. § 29-2028 (Cum. Supp. 2006). We agree with the Court of Appeals that the giving of the instruction in this case was not prejudicial and did not constitute reversible error, because when read as a whole, the jury instructions fairly presented the law and were not misleading. We also agree with the concurrence that while it was not prejudicial, this instruction was redundant and unnecessary, and that in the absence of special circumstances in a particular case, an instruction similar to instruction No. 14 should not be given.

2. CROSS-EXAMINATION OF M.C.

(a) Standard of Review
[3] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause and reviews the underlying factual determinations for clear error.[6]
[4] When the object of cross-examination is to collaterally ascertain the accuracy or credibility of a witness, some latitude should be permitted, and the scope of such latitude is ordinarily subject to the discretion of the trial judge, and, unless abused, its exercise is not reversible error.[7]

(b) Disposition
[5] Schmidt argues that he was denied the right to cross-examine M.C. regarding what he characterizes as an "unfounded allegation" to authorities that M.C. had witnessed Schmidt touch the vaginal area of another minor, T.B.[8] He contends that the Court of Appeals erroneously dismissed this argument by noting that he had not made an offer of proof to establish that the alleged report regarding Schmidt and T.B. was unfounded. Schmidt argues that he made a record on this point through the second of two offers of proof made during Klaumann's testimony, indicating that if permitted to testify, Klaumann would state that he interviewed T.B. and that she told him Schmidt had not touched her. That offer of proof was made in response to a ruling sustaining the State's relevance and hearsay objections to a question asking Klaumann whether M.C. had reported an incident involving Schmidt and T.B. Schmidt did not assign error with respect to this ruling. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[9]
[6,7] Assuming without deciding that we could consider the offers of proof made during Klaumann's testimony in determining whether the district court erred in sustaining objections to Schmidt's subsequent cross-examination of M.C., we conclude there was no reversible error. An accused's constitutional right of confrontation is violated when either (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of a witness, or (2) a reasonable jury would have received a significantly different impression of the witness' credibility had counsel been permitted to pursue his or her proposed line of cross-examination.[10] Although the main and essential purpose of confrontation is the opportunity of cross-examination,[11] trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.[12]
Whether or not Schmidt improperly touched T.B. had no direct bearing on the essential elements of this case, and the attempted cross-examination of M.C. on this point was not directed at a prototypical form of bias. Schmidt's counsel cross-examined M.C. extensively on issues relating to her general credibility, securing her admission that although she had understood the difference between appropriate and inappropriate touching for some time, she had not reported Schmidt's conduct until long after she said that it began. From our review of the record, we conclude that a reasonable jury would not have received a significantly different impression of M.C.'s credibility had Schmidt's counsel been permitted to pursue cross-examination on the collateral matter of her reported observations of Schmidt and T.B. We agree with the Court of Appeals that this restriction on cross-examination did not violate Schmidt's right of confrontation.

3. MOTION IN LIMINE

(a) Standard of Review
[8] The exercise of judicial discretion is implicit in determinations of relevancy under Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), and prejudice under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), and a trial court's decision regarding them will not be reversed absent an abuse of discretion.[13]

(b) Disposition
[9] Because overruling a motion in limine is not a final ruling on the admissibility of evidence and therefore does not present a question for appellate review, a question concerning the admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection during tria1.[14] During his cross-examination of M.C., Schmidt's counsel did not ask specific questions pertaining to possible prior abuse by other persons, but he did elicit M.C.'s admission that she understood the difference between appropriate and inappropriate touching by an adult long before she reported abuse by Schmidt. During his cross-examination of K.S., Schmidt's counsel was able to elicit her testimony regarding prior inappropriate touching by a cousin, over the State's relevance objection. Thus, Schmidt's counsel was able to confront M.C. and K.S. with certain evidence which was the subject of the State's motion in limine. Based upon the principles discussed above, we agree with the reasoning and conclusion of the Court of Appeals that the district court's ruling on the State's motion in limine, and its subsequent reaffirmance of that ruling in response to evidence offered by Schmidt in his case in chief, did not deprive Schmidt of his constitutional right of confrontation.

IV. CONCLUSION
For the reasons discussed, we affirm the judgment of the Nebraska Court of Appeals affirming the convictions and sentences entered by the district court.
AFFIRMED.
NOTES
[1] State v. Schmidt, 16 Neb. App. 741, 750 N.W.2d 390 (2008).
[2] Id. at 751, 750 N.W.2d at 401.
[3] State v. Schmidt, supra note 1 (Cassel, Judge, concurring).
[4] State v. Moore, ante p. 1, 751 N.W.2d 631 (2008); State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007).
[5] State v. Welch, 275 Neb. 517, 747 N.W.2d 613 (2008); State v. Gutierrez, supra note 4; State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006).
[6] State v. Jacobson, 273 Neb. 289, 728 N.W.2d 613 (2007).
[7] State v. Schreiner, ante p. 393, 754 N.W.2d 742 (2008).
[8] Brief for appellant in support of petition for further review at 7.
[9] State v. Dockery, 273 Neb. 330, 729 N.W.2d 320 (2007); State v. Kuehn, 273 Neb. 219, 728 N.W.2d 589 (2007).
[10] State v. Poe, ante p. 258, 754 N.W.2d 393 (2008); State v. Stark, 272 Neb. 89, 718 N.W.2d 509 (2006); State v. Privat, 251 Neb. 233, 556 N.W.2d 29 (1996).
[11] Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); State v. Schreiner, supra note 7.
[12] See State v. Schreiner, supra note 7.
[13] State v. Gutierrez, supra note 4; State v. Robinson, 272 Neb. 582, 724 N.W.2d 35 (2006).
[14] State v. McPherson, 266 Neb. 734, 668 N.W.2d 504 (2003); State v. Titntnens, 263 Neb. 622, 641 N.W.2d 383 (2002).