STATE OF NEBRASKA, APPELLEE, V.
TIMMY ALLEN TIMMENS, APPELLANT.
641 N.W.2d 383

Filed April 5, 2002.   No. S-01-448.

Scott H. Trusdale, of Trusdale & Trusdale, P.C., for appellant.

Don Stenberg, Attorney General, and Scott G. Gunem for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
### NATURE OF CASE
Timmy Allen Timmens lived with his girl friend Tracy Giugler in Overton, Nebraska, and on July 23, 2000, Giugler was found

dead by investigators in the basement of the home she shared with Timmens. An autopsy revealed that Giugler died from blunt trauma to the head, chest, abdomen, and upper and lower extremities, with hemorrhaging and rib fractures. Timmens was arrested and charged with second degree murder. He filed a motion in limine to prohibit the introduction of evidence of his alleged flight while en route to meet investigators at his home and a motion to suppress certain statements he made to law enforcement officials while in custody. The trial court denied the motions, and a jury found Timmens guilty of second degree murder. He was sentenced to serve a term of 45 years' to life imprisonment, and now he appeals his conviction and sentence. We affirm the order of the trial court.

## BACKGROUND

On July 22, 2000, Giugler's son went to Timmens' home in Overton to visit her. Timmens told Giugler's son that Giugler was not home, yet her car was at the house. The son notified Giugler's mother, Janice Ferguson. Ferguson left work and met with one of her daughters and a niece; they decided to call the 911 emergency dispatch service. Deputy Brad Sherman of the Dawson County sheriff's office was dispatched to Overton and spoke with Ferguson and her daughter. They told Sherman that they were worried about Giugler because of their mistrust of Timmens.

That same afternoon, Sherman spoke to Timmens at his residence. Timmens stated that he had not seen Giugler that day. He gave Sherman permission to look around the house to see if Giugler may have taken anything with her. Sherman went through every room on the main floor and saw that the doorway to the basement in the kitchen was covered by a sheet, which was nailed to each corner and pulled very tightly. Timmens told Sherman that they did not use the basement and seemed to watch Sherman's every move while Sherman was near the basement doorway. Sherman did not check the basement at that time out of concern for his safety.

Sherman went back to the sheriff's office and spoke to Investigator Jeff Schwarz. Jeff Schwarz then went to the Overton Family Center and talked to Timmens, who was attending the wedding reception of one of Timmens' sisters. Jeff Schwarz

notified Timmens of his desire to look in Timmens' basement. Timmens agreed to meet the investigators at his home and was to get a ride from another of his sisters, Donna Kay Shaffer.

After arriving at Timmens' residence, Jeff Schwarz observed Shaffer arrive alone. Shaffer, visibly disturbed, told Jeff Schwarz that while she was driving Timmens to his home, he jumped out of the vehicle. Shaffer testified that she agreed to drive Timmens to his house to meet the investigators. While en route, he stated, " 'I'm sorry, I don't know what happened' "; jumped out of the vehicle while it was still moving; and started running across a field. She tried following him, but he kept going. Timmens never returned to his home that evening.

A former girl friend of Timmens testified that on July 24, 2000, she and Timmens were at her home in Kearney, Nebraska, watching the news report of Giugler's murder when Timmens said, " 'I guess I did do it.' "

Jeff Schwarz obtained a search warrant for Timmens' home. He and Investigator Paul Schwarz found Giugler's body lying full length on a couch in Timmens' basement, covered by a quilt. Paul Schwarz pulled the quilt back far enough to uncover Giugler's face. He identified her and determined that she was dead.

Dr. Jerry W. Jones performed an autopsy which revealed that Giugler was beaten over her entire body from head to toe and front to back. Jones opined that the cause of Giugler's death was blunt trauma to the head, chest, abdomen, and upper and lower extremities, with hemorrhaging and rib fractures. Jones testified that the location of bruises on Giugler's hands and wrists indicated that these injuries were defensive.

A warrant was issued for Timmens' arrest, and he was apprehended in Kearney, Nebraska, on the evening of July 24, 2000. He was advised of his *Miranda* rights while being escorted to a Kearney Police Department cruiser and was taken to the Kearney Law Enforcement Center. At the time of his arrest, Timmens refused to speak to investigators. Upon arriving at the Kearney Law Enforcement Center, however, he spoke to Paul Schwarz and Investigator Randy Ricley about the death of Giugler. He gave a statement which was reduced to writing.

According to the statement, Timmens remembered being outside with his dog sometime after he arrived home on Friday

evening, July 21, 2000. He next remembered finding Giugler propped up on some clothes by the washer in the kitchen shortly after he woke up on Saturday morning. He tried to wake her up, but "felt that she was dead." He then picked her up, took her to the basement, and put her on the couch. That interview lasted approximately 3½ hours.

Timmens was then taken to the Buffalo County jail, and from there, Jeff Schwarz and a sheriff's deputy transported him back to the Dawson County jail. While in transport, Timmens began talking, so Jeff Schwarz advised him of his constitutional rights. Timmens did not tell the investigators anything relevant to the case while in transport.

After arriving at the Dawson County jail, Timmens again spoke to the investigators. According to Jeff Schwarz, Timmens stated that he must have been involved in the death of Giugler because he knew she was in the basement. He then stated that he knew he had assaulted Giugler, but did not know why or how. That interview began around 4:30 a.m., roughly 2 hours after his interview in Buffalo County was concluded. It lasted approximately 45 minutes to 1 hour.

On July 26, 2000, Timmens was placed in a room by law enforcement personnel to allow Paul Schwarz to take tissue samples from him. Paul Schwarz testified that it was not his intention to conduct an interview. Timmens told him that he knew the tissue samples were being taken for DNA comparison, and Paul Schwarz advised him that he was correct. Timmens then asked whether the procedures would stop if he discussed what had happened. Paul Schwarz responded that some techniques being used would stop, but most would continue. Timmens then began to cry, and blurted out: " 'I beat her up.' " Paul Schwarz stopped Timmens at that point and told him that they had to contact his attorney, since he was then represented by counsel. Paul Schwarz contacted Jeff Schwarz, who then contacted Timmens' attorney. Paul Schwarz ended all contact with Timmens upon the arrival of Timmens' attorney.

On September 12, 2000, Timmens was charged by information with second degree murder, a Class IB felony, in violation of Neb. Rev. Stat. § 28-304 (Reissue 1995). Timmens elected to stand mute at the arraignment, and the trial court entered a not

guilty plea on his behalf. Timmens filed a motion in limine to prevent the State from introducing evidence by Shaffer or any law enforcement officer as to his alleged flight from any motor vehicles or evidence that he left the city of Lexington around the time the crime charged in the information occurred. The trial court overruled the motion in limine in its entirety.

Timmens also filed a motion to suppress any statements he made after he was represented by counsel and after he was incarcerated in the Dawson County jail. The hearing on that motion covered not only statements made by Timmens to investigators while at the Dawson County jail and while represented by counsel on July 26, 2000, but also the statements made in Buffalo County on July 24 and 25, and those made the morning of July 25, after he arrived at the Dawson County jail. The trial court issued three separate orders denying the motion to suppress, one for each instance that statements were made by Timmens while in custody.

## ASSIGNMENTS OF ERROR

Timmens claims that the trial court erred when it (1) allowed the State to present evidence of his alleged flight and failed to suppress the same; (2) sentenced him to a term of 45 years' to life imprisonment, which constitutes an excessive sentence; and (3) failed to suppress certain statements attributed to him during interrogations by law enforcement officials.

## STANDARD OF REVIEW

■ Because overruling a motion in limine is not a final ruling on the admissibility of evidence and therefore does not present a question for appellate review, a question concerning the admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection during trial. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992).

■ A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and that party will not be heard to complain of the alleged error on appeal. *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997).

■ An appellate court will not disturb sentences within statutory limits, unless the district court abused its discretion in establishing the sentences. *State v. Leonor, ante* p. 86, 638 N.W.2d 798 (2002).

## ANALYSIS

### EVIDENCE OF FLIGHT

Timmens first argues that the trial court erred when it allowed the State to present evidence of his alleged flight and failed to suppress the same. Timmens filed a motion in limine for an order preventing the State from eliciting or introducing any testimony from Shaffer or any law enforcement officer as to his alleged flight from any motor vehicle or that he left the city of Lexington before, near, or after the crime charged in the information occurred. Timmens alleged that said testimony is "speculative, conjectural, conclusionary, lacking in credibility, wholly lacking in foundation, highly prejudicial, would tend to mislead the jury, and would violate [Timmens'] right to due process."

A hearing on the motion in limine was held on January 12, 2001. The trial court found the evidence to be highly relevant and admissible at trial and, therefore, overruled Timmens' motion in limine. Evidence of flight was presented at trial through the testimony of Shaffer and Jeff Schwarz. At no point during that testimony did Timmens object.

■ When a court overrules a motion in limine to exclude evidence, the movant must object when the evidence sought to be excluded by the motion is offered during trial. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998). A motion in limine is but a procedural step to prevent prejudicial evidence from reaching the jury. It is not the office of such a motion to obtain a final ruling upon the ultimate admissibility of the evidence. Rather, its office is to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to the jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself. *State v. Merrill, supra*, citing *State v. Coleman, supra*.

Because overruling a motion in limine is not a final ruling on the admissibility of evidence and therefore does not present a

question for appellate review, a question concerning the admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection during trial. *Id.*

Timmens did not object at trial to the admission of evidence of his flight, which he earlier tried to exclude through the motion in limine. Thus, we conclude that he failed to preserve the alleged error for appellate review.

### TIMMENS' STATEMENTS TO POLICE

Timmens made statements to investigators on three separate occasions while in custody: during the interview on July 24 and 25, 2000, in Buffalo County, during the interview which began at 4:30 a.m. on July 25 in Dawson County, and during the procedure in which Paul Schwarz took physical samples from him on July 26 in Dawson County. Timmens argues that all three statements should have been suppressed and that the trial court erred by failing to do so. Timmens filed a motion to suppress, and at the suppression hearing, the statements he made in all three instances were considered by the court. The trial court issued three separate orders overruling the motion to suppress, finding that the statements made in each instance were relevant and admissible.

Paul Schwarz testified at trial as to the statements Timmens gave on July 26, 2000, during the collection of physical samples. A review of his trial testimony reveals no objection to the admission of that evidence. Jeff Schwarz testified at trial as to the statements Timmens gave on the morning of July 25 in Dawson County. Again, Timmens failed to object to the introduction of that evidence.

Both Paul Schwarz and Ricley testified at trial to the statements Timmens made on July 24 and 25, 2000, after being arrested in Buffalo County, and to the written statement Timmens signed. Timmens made no objection to either the statements made or the introduction of the written statement except that the written statement was cumulative and a violation of the rule against jury note-taking. In his brief, however, Timmens objects to the statements as not being the product of his free and rational choice and not being voluntary.

■ It has long been the rule that in a criminal trial, after a pretrial hearing and order denying a motion to suppress, the defendant must object at trial to the admission of evidence sought to be suppressed to preserve an appellate question concerning the admissibility of that evidence. *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995). A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and that party will not be heard to complain of the alleged error on appeal. *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997).

Although Timmens did make an objection on the basis of the evidence as being cumulative and violative of the rule against jury note-taking, he failed to preserve for review the assignment of error he is now arguing in his brief. Timmens objected to the introduction of the written statement, but not for the same reasons that he alleges in his brief.

■ On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered to the trier of fact. *State v. Harris, ante* p. 331, 640 N.W.2d 24 (2002). An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *State v. Davlin, ante* p. 283, 639 N.W.2d 631 (2002).

We conclude that Timmens failed to preserve the question of the admissibility of the statements he gave to investigators in Buffalo County and Dawson County.

## EXCESSIVE SENTENCE

Timmens also argues that his sentence was excessive and constituted an abuse of discretion. He was found guilty of second degree murder. The statutory penalty for second degree murder is a maximum sentence of life imprisonment and a minimum sentence of 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2000). Timmens was sentenced to a term of 45 years' to life imprisonment.

Timmens alleges that his sentence is nearer to the maximum allowed, which is not warranted under the circumstances before this court. He also alleges that pursuant to plea negotiations, he would have received a straight sentence of 25 years in prison in

return for entering a plea to the charges. Timmens further alleges that to sentence him to 45 years to life in prison constitutes an abuse of discretion, as it penalized him for utilizing his constitutionally guaranteed right of trial by jury.

■ An appellate court will not disturb sentences within statutory limits, unless the district court abused its discretion in establishing the sentences. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Leonor, ante* p. 86, 638 N.W.2d 798 (2002); *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001).

■ In imposing a sentence, a judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Leonor, supra; State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001); *State v. Kula*, 262 Neb. 787, 635 N.W.2d 252 (2001).

■ In considering a sentence, the sentencing court is not limited in its discretion to any mathematically applied set of factors. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *State v. Leonor, supra; State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995).

Timmens has a history of violent behavior. He has had two prior felonies, and one involved violence similar to the incident at issue. He has had 15 prior misdemeanors, at least 5 of which involved violence. The trial court looked to his previous arrests, especially his prior arrest for first degree assault on a former girl friend, and to the savageness of the crime against Giugler. The court concluded that it had to incarcerate Timmens for a considerable period of time for the protection of society. Based upon all of this, the trial court found that a sentence of 45 years' to life imprisonment, with 237 days' credit, was appropriate.

We conclude that the trial court did not abuse its discretion in handing down its sentence upon Timmens. The beating Giugler received was extremely depraved, violent, and senseless.

Moreover, Timmens has a history of violating the law and of violent behavior, committing a similar type of assault on at least one other occasion in the past. We thus affirm the sentence handed down to Timmens.

## CONCLUSION

We conclude that because Timmens did not object at trial to the admission of evidence regarding his alleged flight, he failed to preserve that assignment of error for appellate review. We also conclude that because Timmens did not properly object to the admission of statements he gave to police while in custody, he failed to preserve for review the argument that the trial court erred in admitting the statements. Finally, we conclude that because of the severity of the crime and Timmens' history of violent and unlawful activity, the trial court did not abuse its discretion in sentencing him to a prison term of 45 years to life.

AFFIRMED.