At this time, the record is insufficient to further address the merits of Brooks' assertions about the effectiveness of his counsel.

## V. CONCLUSION

We find no merit to Brooks' assertions on appeal. We affirm.

Affirmed.

———————————

State of Nebraska, appellee, v.
John P. Tharp, appellant.
___ N.W.2d ___

Filed October 14, 2014.    No. A-13-959.

1. **Criminal Law: Trial: Pretrial Procedure: Motions to Suppress: Appeal and Error.** In a criminal trial, after a pretrial hearing and order denying a motion to suppress, the defendant must object at trial to the admission of evidence sought to be suppressed to preserve an appellate question concerning the admissibility of that evidence.

2. **Trial: Evidence: Motions to Suppress: Waiver: Appeal and Error.** A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and that party will not be heard to complain of the alleged error on appeal.

3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.

4. ____: ____. An appellate court gives statutory language its plain and ordinary meaning.

5. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

6. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

Appeal from the District Court for Scotts Bluff County: Randall L. Lippstreu, Judge. Affirmed.

Stacy C. Nossaman-Petitt, of Nossaman Petitt Law Firm, P.C., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Inbody, Chief Judge, and Irwin and Bishop, Judges.

Inbody, Chief Judge.

## INTRODUCTION

John P. Tharp appeals his convictions and sentences, after a jury trial, in Scotts Bluff County District Court for terroristic threats, third degree domestic assault, and two counts of being a felon in possession of a firearm. For the following reasons, we affirm Tharp's convictions and sentences on all four counts.

## STATEMENT OF FACTS

In April 2013, Tharp was charged with count I, terroristic threats, in violation of Neb. Rev. Stat. § 28-311.01 (Reissue 2008), a Class IV felony; count II, third degree domestic assault, in violation of Neb. Rev. Stat. § 28-323(1) (Cum. Supp. 2012), a Class I misdemeanor; and counts III and IV, being a felon or fugitive in possession of a firearm, in violation of Neb. Rev. Stat. § 28-1206(1)(a) (Cum. Supp. 2012), Class ID felonies.

*Motion to Suppress Proceedings.*

On July 12, 2013, Tharp filed a motion to suppress any and all evidence of items seized from his home, including two black powder guns. At the hearing, it was revealed that on April 19, late in the evening, a "hysterical" female, identified as Linda Clary, reported to Scottsbluff police officer William Howton that her boyfriend, Tharp, had assaulted her and put a gun to her head at the residence where she and Tharp resided in Scottsbluff, Scotts Bluff County, Nebraska. Clary reported that the two had been engaged in an argument which led to physical violence and Tharp's chasing after her with a black powder handgun with a brown handle.

Scottsbluff police officer Matt Dodge was directed to the residence, where he made contact with Tharp, who reported that he had been previously convicted of a felony and had two firearms, specifically "muzzle loaders," in the house. Tharp reported to Dodge that it was legal for him to possess the firearms. Tharp was arrested and transported by police to a detention center.

Police were aware of the volatile relationship between Tharp and Clary as a result of previous police contacts involving domestic arguments between the two, and also involving Clary's ex-husband. Dodge testified that he was aware that Tharp's parents also resided in the home and that he was their primary caregiver. Police officers indicated that Clary reported to police that she and Tharp resided in the enclosed porch area of the residence, which information was consistent with the police officers' previous information and knowledge.

After Tharp was taken into custody, Howton and Clary returned to the residence, where Howton requested that Clary retrieve the two guns. Clary agreed and found one black powder handgun, which she indicated was not the gun Tharp had used to threaten her. Clary gave consent to police to search the residence for the second gun. Police searched what they described as an enclosed front porch area consisting of a living room and bedroom, and no other places in the residence were searched. During the course of the search of the enclosed porch area of the residence, police located a second, fully loaded .44-caliber Fillipietta handgun between two dressers in the bedroom.

The district court found that Dodge's initial encounter with Tharp was not a seizure and, as a first-tier police-citizen encounter, did not invoke Fourth Amendment protection. The court found that based upon the disturbance involving a gun, it was reasonable for Dodge to contact Tharp, and Tharp volunteered that he was a convicted felon who possessed two muzzle-loading handguns inside the residence. The court determined that Tharp's claim it was lawful for a prior convicted felon to possess a muzzle-loading firearm in Nebraska was misplaced and that Dodge had probable cause to arrest Tharp without a warrant.

The district court further determined that Clary had actual or apparent authority to consent to the search of the enclosed porch area of the residence, as Clary had advised police that she lived with Tharp in the enclosed porch area, which information was corroborated by the officers' prior knowledge and was not disputed by any evidence to the contrary. The court concluded that Clary had common authority with Tharp to consent to the search of the enclosed front porch area. For all of those reasons, the court ordered that Tharp's motion to suppress be overruled.

*Jury Trial Proceedings.*

Prior to trial, both parties stipulated that Tharp was a convicted felon, his status arising out of a 1985 felony conviction in Iowa.

Clary testified that she had been in a relationship with Tharp for 1½ years and explained that although the relationship began well, it became violent and aggressive. Clary testified that she had lived with Tharp for 6 months at his home, the residence at issue in the present case. Clary testified that Tharp's parents also resided in the home, but that his parents utilized the majority of the house, while she and Tharp stayed only in the enclosed front porch area, which is divided into two rooms, one-half as a living room and the other half as a bedroom. Clary explained that Tharp kept knives and two black powder guns at the residence, in the bedroom. Clary testified that Tharp purchased the guns at a store in Sidney, Nebraska, and also that he previously informed her that he was an ex-felon.

Clary testified that on April 19, 2013, Tharp had been drinking and became verbally aggressive, which aggression eventually turned into physical violence wherein Tharp pushed her onto a bed, straddled her, and wrapped both his hands around her neck. Clary was able to escape Tharp's grip and attempted to leave the residence in her vehicle when Tharp grabbed a black powder handgun from inside the residence and put the gun to Clary's head, threatening to kill her. Clary attempted to pull out of the driveway and hit a lightpost, damaging the door to the vehicle. Clary then drove away from the

residence and to a convenience store down the street, where police were contacted.

Clary testified that at times, she had maintained an apartment of her own, but that that was not the case in April 2013. Clary testified that on the night of the incident, she had no personal belongings at Tharp's residence because she had planned to move into her own residence in May. Tharp's sister and brother-in-law refuted Clary's assertion that she resided with Tharp by testifying that Clary visited Tharp at his residence, but did not live there because she had an apartment of her own. Tharp's mother, who resides in the main area of the residence, testified that she did not hear any arguments occur on the night of April 19, 2013, and that Clary did not live with Tharp because she had her own residence.

At trial, both police officers, Howton and Dodge, gave testimony similar to the testimony they each gave at the hearing on the motion to suppress. Additionally, Howton testified that he observed redness and bruising along both sides of Clary's neck and bruising on her right arm. Howton also gave more detailed testimony regarding the two guns taken from Tharp's residence. Howton testified that Clary retrieved the first gun and turned it over to police and that she then gave permission for police to help her find the second gun. Howton testified that both guns were black powder handguns and that in the chamber of the other gun, found between the two dressers, there was a round of ammunition, which indicated that the gun was loaded. Howton testified that he had to remove the percussion caps from the gun and explained that percussion caps are not the same as bullets, but that the gun shoots a bullet. Howton testified that he was not specifically aware of the difference between a "black powder gun and a regular firearm."

Dodge explained that the black powder in guns such as those involved in this case is located in the gun's cylinder and that to make a projectile go down the barrel, a percussion cap is placed on the outside of the cylinder to set the black powder on fire. Dodge further testified that the hammer of the gun strikes the percussion cap, causing an explosion that "blows

all the black powder at once" and "throws the bullet down the barrel."

The owner of a sporting goods company in Scottsbluff testified that there are no federal regulations on the sale of black powder guns. He testified that Tharp's guns were black powder handguns which were classified as replicas of firearms produced and manufactured before 1898. He explained that this differentiation was significant because guns produced before 1898 are considered antique and do not require firearm dealers to record their sale. He testified that the black powder acts as the propellant to push a lead ball out of such a gun's barrel.

Tharp testified in his own behalf, stating that he resides in the residence at issue herein with his parents. Tharp admitted that he had previously been convicted of a felony in 1985, in Iowa. Tharp was in an intimate relationship with Clary, but testified that he did not consider it to be a "boyfriend/girlfriend relationship." Tharp testified that Clary had never lived at the residence with him and did not keep any personal belongings there.

Tharp explained that on the evening of April 19, 2013, Clary was at the residence watching television with him and an argument ensued. Tharp denied that there was any yelling during the argument or that he assaulted Clary, but stated that she backed her vehicle into the pole and "clipped [his] legs in the [vehicle's] door" such that he could not move until she pulled forward. Tharp further denied that he pulled a gun on her at any time during the evening. Tharp testified that the redness on Clary's upper body was caused by chemicals that she came into contact with at her job.

Tharp admitted that he owned two "muzzle loader" guns but testified that even as a felon, he could legally purchase and possess black powder guns because a background check was not required. Tharp testified that under federal law, he could possess the guns, but that "[i]t's [just] this place that's got their [sic] own statutes."

The matter was submitted to the jury, which found Tharp guilty of all four crimes charged in the information. The

district court sentenced Tharp to 12 to 24 months' imprisonment on count I, 6 months' imprisonment on count II, and 3 to 5 years' imprisonment each on counts III and IV, with all sentences ordered to run consecutively and 188 days' credit for time served.

## ASSIGNMENTS OF ERROR

Tharp assigns that the district court erred by overruling his motion to suppress and in excluding certain evidence regarding the purchase of firearms by a prohibited person, specifically the difference between a "firearm" and an "antique firearm."

## ANALYSIS

*Motion to Suppress.*

Tharp argues that the warrantless search conducted by law enforcement violated his constitutional right against unreasonable searches and seizures.

[1,2] Upon our review of the record, it does not appear that Tharp properly preserved this issue for review, because he did not timely renew his motion to suppress at trial. In a criminal trial, after a pretrial hearing and order denying a motion to suppress, the defendant must object at trial to the admission of evidence sought to be suppressed to preserve an appellate question concerning the admissibility of that evidence. *State v. Timmens*, 263 Neb. 622, 641 N.W.2d 383 (2002). A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and that party will not be heard to complain of the alleged error on appeal. *Id*.

Prior to trial, Tharp made a motion to sequester witnesses and a motion to endorse two witnesses, but no further motions or objections were made. During trial, Tharp did not object to the testimony of either Howton or Dodge or to the photographic evidence submitted during their testimony. At the conclusion of the State's case, Tharp made a motion for summary dismissal on the two counts of felon in possession of a firearm, which motion was overruled. By failing to object to the testimony of either Howton or Dodge, Tharp waived his right to appeal the admission of this evidence.

At oral argument, Tharp argued that the case of *State v. Van Ackeren*, 200 Neb. 812, 265 N.W.2d 675 (1978), provides that the renewal of an objection to the denial of the motion to suppress is not essential to preserve this question for our review on appeal. However, in the case of *State v. Pointer*, 224 Neb. 892, 895, 402 N.W.2d 268, 271 (1987), the Nebraska Supreme Court addressed the holding of *Van Ackeren* and held that "in a criminal trial, after a pretrial hearing and order which overrules a defendant's motion to suppress his statement, the defendant must object at trial to the receipt of the statement in order to preserve the question for review on appeal." See, also, *State v. Walker*, 272 Neb. 725, 724 N.W.2d 552 (2006); *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005); *State v. Timmens, supra*; *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Rodgers*, 237 Neb. 506, 466 N.W.2d 537 (1991). Accordingly, this issue has not been properly preserved for our review on appeal.

### Felon in Possession of Firearm.

Tharp specifically assigns that the district court erred by excluding evidence that he wanted to present regarding his firearms. However, in the argument section of his brief, he argues only a mixture of inappropriate statutory interpretation and insufficiency of the evidence.

[3-5] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *State v. Ramirez*, 285 Neb. 203, 825 N.W.2d 801 (2013). An appellate court gives statutory language its plain and ordinary meaning. *State v. Schanaman*, 286 Neb. 125, 835 N.W.2d 66 (2013). And in construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

Tharp argues that he should not have been charged with or convicted of two counts of felon in possession of a firearm, because he is exempt from the definition of a felon in possession of a firearm under Nebraska statutes because he legally purchased his firearms, which are considered antique. Tharp

contends that under Neb. Rev. Stat. § 69-2403(2)(b) (Cum. Supp. 2012), the certificate required for the purchase of a gun is not required if the handgun is an "antique handgun," and that his two handguns are antique. Section 69-2403 governs the sale, lease, rental, and transfer of a handgun. Tharp was charged with two counts of a possession crime in accordance with § 28-1206; there were no allegations or charges of violations of Neb. Rev. Stat. § 69-2402 (Cum. Supp. 2012), and the jury was not charged with making any determinations regarding the purchase of the firearms.

Neb. Rev. Stat. § 69-2404 (Reissue 2009) provides that any person "desiring to purchase, lease, rent, or receive transfer" of a handgun must apply with law enforcement for a certificate. At oral argument, Tharp argued that under § 69-2403(2)(b), a person does not need a certificate to purchase an antique firearm; that that allows anyone, including felons, to purchase an antique firearm; and that as such, the Nebraska statutes allow for felons to purchase firearms. Section 69-2403 allows certain handguns to be purchased without a certificate pursuant to § 69-2404. Those exceptions include a federally licensed firearms dealer acquiring a handgun, the purchase of an antique handgun, a person acquiring a handgun on behalf of a law enforcement agency, and certain transfers of handguns. In relevant part, § 69-2402(1) defines an antique handgun as

> any handgun or pistol, including those with a matchlock, flintlock, percussion cap, or similar type of ignition system, manufactured in or before 1898 and any replica of such a handgun or pistol if such replica (a) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition or (b) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

The problem with Tharp's arguments is that neither § 69-2403 nor any other Nebraska statute includes any language which specifically indicates that the Legislature intended any circumstances under which felons are allowed to purchase firearms or handguns. Instead, the Nebraska

statutes clearly and specifically prohibit felons from possession of any type of firearm. Section 28-1206(2)(b) provides that it is a Class ID felony for a person who has previously been convicted of a felony to possess a deadly weapon which is a firearm as a first offense. Neb. Rev. Stat. § 28-1201(1) (Cum. Supp. 2012) defines a firearm as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or frame or receiver of any such weapon." Thus, we find no merit to Tharp's argument that under § 69-2403, felons are allowed to purchase antique firearms because no certificate is required.

The remainder of Tharp's argument centers upon federal statutes regarding firearms which are much more specific and detailed than the Nebraska statutes in regard to federal definitions and classifications of firearms. However, Tharp was not charged in federal court with a violation of federal law, but was charged with violations of Nebraska criminal statutes.

[6] As to Tharp's sufficiency of the evidence argument, regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

The plain language of § 28-1201(1) is that a firearm is "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or frame or receiver of any such weapon." The Legislature has not indicated that it intends for the definition of firearm to be any more specific than that definition.

The undisputed evidence presented at trial was that Tharp had previously been charged with a felony, that Tharp was in possession of two black powder handguns, and that both

handguns were designed or had the ability to expel a projectile by the action of the explosive black gunpowder. Clearly, the evidence was sufficient for the jury to find Tharp guilty of both counts of felon in possession of a firearm. This assignment of error is without merit.

## CONCLUSION

In conclusion, Tharp failed to preserve the issue of the motion to suppress for appellate review, and given the plain language of § 28-1201, the evidence presented at trial was sufficient for the jury to convict Tharp of two counts of felon in possession of a firearm. Tharp's assignments of error are without merit, and as such, we affirm.

AFFIRMED.