IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. VARNEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ARTHUR T. VARNEY, APPELLANT.

Filed November 5, 2019.    No. A-18-1137.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Mary M. Dvorak, and Lauren J. Micek for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

This is a direct appeal from a conviction of first degree sexual assault under Neb. Rev. Stat. § 28-319(1)(a) (Reissue 2016) following a jury trial in the district court for Douglas County. For the reasons stated below we affirm.

## BACKGROUND

On April 16, 2017, Arthur T. Varney walked down to his neighbor's house to borrow some tools for a car repair project. A male occupant of the house at 3320 Fowler Avenue opened the door for Varney and gave Varney permission to come in and look for what he needed: a wrench, a pair of pliers, and a hammer. While Varney was hunting for the tools the victim, A.H., aged 20, was upstairs in the house fixing her hair. As she was looking in the mirror A.H. saw Varney coming

up the stairs behind her. Varney entered A.H.'s bedroom and grabbed her from behind around the neck and choked her. A.H. testified Varney hit her on the head with a hammer, unbuttoned her pants, and pushed her face down onto the bed in the room. Once on the bed A.H. testified Varney held her down and digitally penetrated her vagina while she screamed and tried to kick him. The commotion alerted A.H.'s cousin, Dominique B., age 18, and her brother Donovin B., age 15, who descended on the bedroom and were eventually able to chase Varney from the house. Following Varney's departure the police were called. While waiting for the police to arrive Dominique noticed A.H.'s injuries which included a "knot on her forehead, fingerprints around her neck and blood in the toilet in the bathroom."

After the police arrived A.H. was taken to the hospital where a forensic examination was performed by a sexual assault nurse examiner. The nurse examiner catalogued physical injuries to A.H. which included a bruise on her forehead; five bruises on her left breast; and redness, swelling, and a one millimeter tear with bleeding in her vaginal area. The nurse examiner testified these injuries were consistent with "blunt penetrating force" to the vagina and consistent with the events described by A.H. The nurse examiner also testified that A.H. identified her attacker as "Juice," a nickname used by Varney.

The district court submitted the case to a jury and a guilty verdict was returned and accepted by the court. Varney was ultimately sentenced to serve a term of "not less than 12 years, nor more than 14 years in prison" and ordered to register as a sex offender under the Nebraska Sex Offender Registration Act. Varney was credited with 384 days served prior to sentencing. This appeal followed.

ASSIGNMENTS OF ERROR

Varney assigns three errors for consideration by this court. First, that the trial court improperly denied his *Batson* challenge since the State failed to provide racially neutral reasons for striking the only African American prospective juror. See *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Second, that the evidence presented at trial was insufficient as a matter of law to support the jury's finding of guilt on the charge of first degree sexual assault. And third, that the trial court imposed an excessive sentence.

STANDARD OF REVIEW

An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. It reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id.* A judicial abuse of discretion is present when the reasons

or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

ANALYSIS

*BATSON* CHALLENGE WAS PROPERLY DENIED

At the start of the trial, jury selection was conducted with a venire of 27 potential jurors. Only 2 of the 27 empaneled were African American but only 1 was ever identified with particularity. Varney is also African American. Varney's lawyer raised a *Batson* challenge after the parties exercised their peremptory strikes. After hearing argument the trial court overruled the challenge.

Determining whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process. *State v. Wofford, supra* (citing *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017)). First, a defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge based on race. Second, assuming the defendant made such a showing, the prosecutor must offer a race-neutral basis for striking the juror. And third, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination. *Id.* At all times during this process the burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Id.*

The African American juror in this case, Juror No. 3, responded to questioning during voir dire by revealing her brother was convicted of a sex crime against a victim who later recanted the accusation. Juror No. 3 said her brother had suffered long-term consequences from the conviction since he was still on the Sex Offender Registry 20 years later for a crime she believed he did not commit. In offering a race-neutral reason for the strike the State explained it was concerned Juror No. 3 would be worried about convicting someone "and a victim could be lying about it and change their mind later." The State went on to note "that the victim in this case is also African American so we are losing a juror of her peer as well."

In responding to the State's rationale, Varney's lawyer pointed out another juror had described her own sexual assault, Juror No. 24, a white female, who seemed to take some responsibility for her victimization since she was intoxicated at the time. Varney's lawyer asserted the State's failure to strike this juror for "the potentially adverse impact that point of view would have for the State" was some evidence of an improper purpose in striking Juror No. 3.

During oral argument Varney's counsel directed the court to a recent U.S. Supreme Court case which raised factors for a trial judge to consider in evaluating whether racial discrimination occurred during jury selection. We have reviewed *Flowers v. Mississippi*, ___ U.S. ___, 139 S. Ct. 2228, 204 L. Ed. 2d 638 (2019), and find it to be distinguishable from Varney's case and therefore not applicable here. In *Flowers* the same prosecutor was involved in all six trials against Flowers based on the same alleged murders. Over the course of the six trials, a pattern of intentional discrimination developed during jury selection. In the 6 combined trials, the State employed its peremptory challenges to strike 41 of the 42 prospective black jurors. In the sixth trial, five of the six prospective black jurors were struck. In each of Flowers' cases there were several prospective black jurors in the pool: 5 black and 31 white in the first trial, 5 black and 25 white in the second trial, 17 black and 28 white in the third trial, 16 black and 20 white in the fourth trial, and 6 black

and 20 white in the sixth trial. Information is not available for the fifth trial. And, the prosecutor asked each prospective white juror only one question during voir dire, while asking each prospective black juror a minimum of 12 questions.

In Varney's case there were only 2 black jurors out of the 27 called and both were struck but there is only specific information available for Juror No. 3. Juror No. 3 asked to be interviewed separately, along with two other jurors, because these three jurors had relevant individual experiences related to sexual assault which deserved more intensive scrutiny.

In objecting to striking Juror No. 3, Varney's argument was the pool was "not racially reflective of the community" and denied him due process. In raising *Batson* challenges the *Flowers* court said defendants may present:

- statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case;
- evidence of a prosecutor's disparate questioning . . . ;
- a prosecutor's misrepresentations of the record when defending the strikes during the *Batson* hearing;
- . . . ;
- other relevant circumstances that bear upon the issue of racial discrimination.

*Flowers v. Mississippi*, 139 S. Ct. at 2243. The public defender in this case did not present any evidence; she simply called the court's attention to the fact there were no black jurors on the panel and that the white juror who was admittedly intoxicated at the time of her assault was allowed to sit.

The trial court was not persuaded by Varney's argument and neither are we. Since Varney was on trial, and since his situation had the potential to resemble the same detrimental outcome experienced by Juror No. 3's brother, we find no error in the court's denial of Varney's *Batson* challenge. We find the State's rationale for striking Juror No. 3 was related to prejudice to the State's efforts in seeking a conviction rather than based on race. The *Flowers* opinion reminds us that trial judges are primarily responsible for the enforcement of *Batson* and these determinations of credibility and demeanor deserve great deference. We see no reason to disturb the trial court's judgment on the *Batson* question.

The situation with Juror No. 24 was distinguishable because here there was no suggestion that A.H. was in some way responsible for her victimization, as was the case with Juror No. 24. Thus, there was a race-neutral basis for the State striking Juror No. 3 and for keeping Juror No. 24.

SUFFICIENCY OF EVIDENCE

When considering a sufficiency of the evidence claim the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been established beyond a reasonable doubt. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). A person commits first degree sexual assault when he or she "subjects another person to sexual penetration without the consent of the victim." § 28-319(1)(a).

- 4 -

Varney argues the inconsistencies in the witness testimony about the date and time of the assault and who called the police and when, and whether or not the victim had "hung out with Varney" 2 weeks before the assault were inconsistencies establishing the unreliability of the State's witnesses. Varney argues the fact the victim could not identify him in the courtroom until after a recess was especially suspicious, as was the inconsistent testimony among the occupants of the house about whether he was chased out of the house with a shotgun and the identities of those involved in the altercation with Varney after the assault. However, Varney is unable to point to any evidence tending to undermine the essential elements of the assault itself.

What is clear and consistent in all the testimony and other evidence is that the victim was hit in the head with a hammer and then sexually assaulted by Varney who was interrupted in the act and chased from the premises by Dominique and Donovan. The injuries to A.H. were documented by a trained nurse who recorded the identity of the assailant as "Juice," also known as Varney. Dominique identified Varney as the attacker and eventually so did A.H.

The jury was instructed to "determine the facts" and "judge the credibility of the witnesses" and in so doing concluded Varney had committed a first degree sexual assault beyond a reasonable doubt. We are persuaded any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, would have found the same. Therefore, Varney's claim that the verdict is not supported by sufficient evidence fails.

EXCESSIVE SENTENCE

Varney argues his sentence was excessive since it did not "fit both the crime and the offender" and, therefore, the court abused its discretion, which permits this court to correct, reduce, or modify the result. Brief for appellant at 14. See also *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). Varney directs us to *State v. Timmens*, 263 Neb. 622, 631, 641 N.W.2d 383, 391 (2002), for factors controlling any sentence imposed by a district court:

> In imposing a sentence, a judge should consider the defendant's age, mentality, education, experience and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime.

We will review Varney's sentence through this lens.

The presentence report prepared in anticipation of the sentencing hearing was thorough and illuminating and was available to the sentencing court in its consideration of the *Timmens* factors. The court stated on the record that it had "considered the factors in *State v. Thurman*[,] 273 Neb. 518, 730 N.W.2d 805 (2007)," which are identical to those in *Timmens*, but it did not explain how it weighed the factors. That is the court's prerogative. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

At the time of the offense Varney was 24 years old. He was 26 years old by the time of sentencing. He had completed high school in Liberia and had worked in various retail jobs in New Jersey and Nebraska after immigrating to this country. Varney has a 5-year-old daughter living with her mother in California. Varney has been convicted of two misdemeanor traffic offenses; a misdemeanor failure to appear offense; a protection order was entered against him in June 2017;

he has a conviction for second degree attempted assault, a Class IIIA felony, after he assaulted and threatened to kill a man with a crowbar and a knife; and an additional second degree attempted assault charge, also a Class IIIA felony. Subsequent to the assault on A.H., and after his first interview with police, Varney fled from his home in Omaha and returned to New Jersey. A warrant was issued for his arrest and extradition back to Nebraska. Various assessments conducted by the probation office indicated Varney to be at "very high risk for reoffending" and at "very high risk for community based interventions."

The probation officer also noted Varney had a "history of anger management deficits and has issues with intimidation and control, inappropriate sexual activity, and issues with weapons use." The officer concluded that Varney "accepts no responsibility for the convicted crime and refers to it as an alleged incident and denies ever touching the victim."

Neb. Rev. Stat. § 28-105(1) (Reissue 2016) specifies the penalty for Varney's conviction of a Class II felony is a maximum sentence of 50 years' imprisonment and a minimum sentence of 1 year's imprisonment. The 12- to 14-year sentence imposed by the trial court was well within the statutory range and was based on information in the presentence investigation which supported the sentence. The sentence ordered for Varney was not untenable given the record, and, as a result, not an abuse of discretion.

## CONCLUSION

For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED.